UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

CYNTHIA SUE GABARA, et al.,

    Debtors.
_____/

LIBERTY MUTUAL INSURANCE COMPANY,
a Massachusetts Corporation,

    Plaintiff,

v.

MERTON S. GABARA, et al.,
    Defendants.
_____/

Case Nos.   16-21394-dob
               16-21395-dob
               16-21392-dob
               16-21391-dob
Chapter 7 Proceedings
Hon. Daniel S. Opperman

Adversary Proceeding
Case No. 20-2053-dob

## OPINION REGARDING CORRECTED MOTION TO DISMISS
## FILED BY DEFENDANTS JENNA OLIVER AND CRYSTAL PARRIS

### Introduction

Defendants Jenna Oliver and Crystal Parris request dismissal of the Complaint against them because Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") fails to state a claim upon which relief can be granted. Liberty Mutual disagrees. The Court heard oral arguments on July 22, 2021 and took this matter under advisement. For the reasons stated in this Opinion, the Court grants in part and denies in part the request to dismiss Plaintiff's Complaint.

### Jurisdiction

The parties do not agree that this is a core proceeding, so the Court finds it has jurisdiction for the reasons stated in its May 12, 2021 Opinion Regarding Defendants' Motion to Dismiss.

### Facts

A.    Introduction

The United States District Court for the Eastern District of Michigan previously concisely summarized the salient introductory facts as follows:

1

Plaintiff Liberty Mutual Insurance Company alleges that Defendants engaged in fraud in connection with the settlement of adversary proceedings in bankruptcy. In 2016, Plaintiff filed suit against DeVere Construction, Cynthia Sue Gabara, Cheryl Lumsden, Richard Lee Crittenden, and Michael Crittenden, seeking to recover on construction bonds and an indemnity agreement. Subsequently, the individual indemnitors ("Debtors") filed Chapter 7 bankruptcy petitions. The Debtors did not list Tower Developers, LLC ("Tower"), as an asset. Liberty initiated adversary proceedings against each of the Debtors. After participating in mediation, Liberty, the Debtors, and the Debtors' spouses (Defendants Merton Gabara, Gary Lumsden, Tamyra Crittenden, and non-party Susan Crittenden, collectively referred to as the Non-Debtor Spouses) negotiated a global settlement agreement.[1] *See* ECF No. 1-2.

As part of the settlement, Liberty sought the liquidation of Tower, but the Non-Debtor Spouses objected, representing that Tower was owned solely by them and not the Debtors. In support, the Non-Debtor Spouses provided assignments indicating that each Debtor transferred his or her membership interest in Tower to his or her spouse in 2005. *See* ECF No. 1-1. These assignments were witnessed by Jenna Oliver and Crystal Parris, who are the daughters of the Lumsdens and Gabaras, respectively.

Relying on the assignments and believing that any potential fraudulent conveyance claim was time barred, Liberty did not pursue liquidation of Tower. ECF No. 1 at ¶¶ 37-39. The parties executed the Settlement Agreement on March 2, 2018, and the adversary proceedings were dismissed on April 19, 2018. The dismissal orders provided that the adversary proceedings may be reopened for the purpose of enforcing the Settlement Agreement.

In November 2019, one of the Non-Debtor Spouses, Susan Crittenden, contacted Liberty's counsel. Susan Crittenden claimed that the Debtors fraudulently transferred their interests in Tower to the Non-Debtor Spouses in 2016 and backdated the assignments to 2005. She signed an affidavit stating that the purpose of the transfers was to avoid any lien or liquidation of Tower by Liberty. ECF No. 1 at ¶ 41. As corroboration, Susan Crittenden stated that Oliver and Parris witnessed the assignments by signing their married names, although they were not yet married at the time the assignments were purportedly executed in 2005.

Liberty filed this action against Non-Debtor Spouses Merton Gabara, Gary Lumsden, and Tamyra Crittenden, as well as Oliver and Parris. Liberty alleges claims for fraudulent inducement and conspiracy to commit fraud.

---

[1] Merton Gabara, Gary Lumsden, and Tamyra Crittenden are sued in their capacities as trustees for their trusts. They signed the Settlement Agreement as individuals and as trustees for their trusts. ECF No. 1-2.

B. <u>Specific Allegation Directed to Ms. Oliver and Ms. Parris</u>

Since the instant Motion to Dismiss is based on Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b), the Court recites pertinent allegations in Plaintiff's Complaint. As to Defendants Oliver and Parris, these allegations are:

> 5. Jenna Oliver is a Michigan citizen and resident located at 13751 Park Road, Lachine, MI 49753. Jenna Oliver is the daughter of Gary and Cheryl Lumsden.
>
> 6. Crystal Parris is a Michigan citizen and resident located at 13816 Trapp Road, Alpena, MI 49707. Crystal Parris is the daughter of Merton and Cynthia Gabara.
>
> . . .
>
> 31. There are two witnesses that executed each Assignment of Membership Interest – Jenna Oliver and Crystal Parris.
>
> . . .
>
> 48. In response, Susan Crittenden informed Liberty that the witnesses – Jenna Oliver and Crystal Parris – that executed the Assignments of Membership Interests were the daughters of Cheryl Lumsden and Cynthia S. Gabara, respectively, and that they executed the Assignments using their married names, however, Susan Crittenden believed that they were not yet married at the time the Assignments were purportedly executed – on February 10, 2005.
>
> 49. Liberty obtained copies of the Marriage Licenses for Jenna Oliver and Crystal Parris, and confirmed that Mrs. Crittenden was correct – Jenna Oliver and Crystal Parris were not married until after they purportedly executed the Assignment of Membership Interest on February 10, 2005, yet they both executed the Assignments using their married names.
>
> 50. Jenna Oliver, formally Jenna Lumsden, was married on June 26, 2008. A true and accurate copy of Jenna Oliver's Marriage License is attached hereto as <u>Exhibit 5</u>.
>
> 51. Jenna Oliver married approximately three and a half years after the Assignments were purportedly executed on February 10, 2005.
>
> 52. Crystal Parris, formally Crystal Gabara, was married on June 27, 2005. A true and accurate copy of Crystal Parris' Marriage License is attached hereto as <u>Exhibit 6</u>.
>
> 53. Crystal Parris married approximately five months after the Assignments were purportedly executed on February 10, 2005.

3

54. On May 22, 2020, Liberty informed the Debtors and Non-Debtor Spouse Defendants that it has come to Liberty's attention that Jenna Oliver and Crystal Parris executed the Assignments using their married names even though neither had yet married and that this discrepancy, at the bare minimum, calls into question the validity of the Assignments.

55. Neither the Debtors nor Defendants have addressed why Jenna Oliver and Crystal Parris's signatures contain their married names.

. . .

## FRAUDULENT INDUCEMENT

. . .

58. The Daughter Defendants made representations with respect to the ownership of Tower that were false. Namely, the Daughter Defendants, by executing the Assignments of Membership Interest as witnesses, falsely represented that the Non-Debtor Spouse Defendants owned Tower, have owned Tower since February 10, 2005, and that the transfer of ownership occurred on February 10, 2005.

## CONSPIRACY TO COMMIT FRAUD

. . .

66. The Defendants, through a concerted action, acted together to accomplish an unlawful purpose through unlawful means.

67. The Defendants had an understanding or an agreement that they were going to act together for the common purpose of fraudulently postdating the Assignments of Membership Interest to defraud and misrepresent to Liberty that Tower was owned by the Non-Debtor Spouses, had been owned by the Non-Debtor Spouse Defendants since February 10, 2005, and that the transfer of ownership from the Debtors to the Non-Debtor Spouse Defendants occurred on February 10, 2005.

68. The Defendants' false representations were material to Liberty's understanding, assumption and belief that Tower was wholly owned by the Non-Debtor Spouse Defendants. The Defendants' false representations were material also because it influenced and convinced Liberty to remove the liquidation of Tower from the Settlement Agreement.

69. The Defendants were aware that their representations concerning the ownership of Tower were false.

70. The Defendants were aware that their representations were made with the intent and for the purpose of inducing Liberty into forgoing any recovery or claim against Tower and excluding the liquidation of Tower from the Settlement Agreement.

71. The Defendants' actions were willful, wonton [sic] and intentional.

72. Liberty justifiably relied on the Defendants' material misrepresentations.

73. Liberty has been damaged by the Defendants' false, material misrepresentations in an amount that exceeds $75,000.

C. <u>Affidavit of Susan Crittenden</u>

A key exhibit to Plaintiff's Complaint is the Affidavit of Susan Crittenden, attached as Exhibit 3. This Affidavit states:

> I, Susan Crittenden, having been sworn under oath, deposes and states, and could competently testify to the following matters that are within my personal knowledge if I am called upon to testify at trial:
>
> 1. I am widowed and my deceased husband is Michael Crittenden and I have personal knowledge of the facts related to the captioned lawsuit.
>
> 2. Michael Crittenden, along with his siblings, Richard Lee Crittenden, Cynthia Sue Gabara and Cheryl Lumsden, and other corporate entities ("Indemnitors") executed a General Agreement of Indemnity ("Indemnity Agreement") in exchange for Liberty Mutual Insurance Company ("Liberty") extending surety credit in the form of payment and performance bonds on behalf of DeVere Construction Company, Inc. ("DeVere"). I along with Tamyra J. Crittenden, Merton S. Gabara, and Gary Lumsden (collectively, the "Non-Indemnitor Spouses"), are the spouses of Michael Crittenden, Richard Lee Crittenden, Cynthia Sue Gabara and Cheryl Lumsden, respectively, and did not enter into the Indemnity Agreement with Liberty.
>
> 3. I was aware that the Indemnity Agreement requires that the Indemnitors reimburse Liberty for any costs it incurs as a consequence of issuing bonds on behalf of DeVere. I am aware that Liberty issued numerous bonds at the request of the Indemnitors.
>
> 4. I am also aware that numerous issues arose with DeVere's performance on several construction projects and that Liberty incurred certain costs.
>
> 5. I am aware that that [sic] in February of 2016, Liberty filed a lawsuit against the Indemnitors seeking reimbursement of the costs it incurred as a consequence of issuing the bonds on behalf of DeVere.
>
> 6. I am aware that Tower Developers, LLC, originally owed [sic] by Richard Lee Crittenden, Michael Crittenden, Cynthia Sue Gabara, and Cheryl Lumsden served as a holding company for DeVere's assets.
>
> 7. Subsequent to the commencement of Liberty's lawsuit in 2016, I, along with the other Non-Indemnitor Spouses, were approached by Richard Lee

5

Crittenden, Michael Crittenden, Cynthia Sue Gabara and Cheryl Lumsden to transfer the ownership of Tower Developers, LLC, to the Non-Indemnitor Spouses.

      8.     Namely, Richard Lee Crittenden, Michael Crittenden, Cynthia Sue Gabara and Cheryl Lumsden prepared and presented to myself and the other Non-Indemnitor Spouses an Assignment of Membership Interest that would effectuate the transfer of ownership in Tower Developers, LLC from Richard Lee Crittenden, Michael Crittenden, Cynthia Sue Gabara and Cheryl Lumsden to the Non-Indemnitor Spouses' living trusts.

      9.     I, as trustee, executed said Assignment of Membership Interest transferring Michael Crittenden's membership interest in Tower Developers, LLC, to my living trust, the Susan J. Crittenden Living Trust dated 2/26/93.

      10.    The other Non-Indemnitor Spouses, as trustees, also executed similar Assignments of Membership Interest.

      11.    The Assignments of Membership Interest transferring the ownership of Tower Developers, LLC, are dated February 10, 2005, however, the documents were executed in 2016, after Liberty initiated its litigation against the Indemnitors.

      12.    Richard Lee Crittenden, Michael Crittenden, Cynthia Sue Gabara and Cheryl Lumsden explained to me that the reason we were transferring ownership of Tower Developers, LLC and post-dating the Assignments of Membership Interest was to keep Liberty from having access to, the ability to lien upon, or seize Tower Developers, LLC's assets.

      13.    Cheryl Lumsden drafted the documents for the spouses to execute.

      Pursuant to 28 U.S.C. §1746, I swear and certify under the penalty of perjury that the foregoing declaration is true and correct to the beset of my knowledge, information and belief.

D.     <u>Consent and Assignment Documents</u>

Liberty Mutual attached various documents as Exhibit 1 that as Liberty Mutual alleged in paragraph 26 of the Complaint purportedly transfer each Debtor's respective interest in Tower to a Non-Debtor Spouse. First, a document labeled "Consent" indicates each Debtor consented to the conveyance, transfer and assignment made by a subsequent assignment. At the end, the Consent states:

      IN WITNESS WHEREOF, this Consent is made and given as of February 10, 2005.

Likewise, each assignment stated:

> IN WITNESS WHEREOF, this Assignment of Membership Interests is made and received as of February 10, 2005.

Ms. Oliver and Ms. Parris signed each document as a witness.

Arguments of the Parties

Defendants Oliver and Parris assert in their Rule 12(b)(6) Motion to Dismiss for failure to state a claim the following:

(1) Plaintiff's Complaint fails to meet the heightened pleading standard under Fed. R. Civ. P. 9(b);

(2) Susan Crittenden's Affidavit should be disregarded by the Court; and

(3) Plaintiff has failed to state a claim for which relief can be granted.

Liberty Mutual responds that it has met the threshold test for pleading misrepresentation and that its claim should be allowed to be further developed through discovery, and if it has not, it requests 30 days to amend its Complaint. It further argues that Susan Crittenden's affidavit is attached as an exhibit to its Complaint and the Court has no reason to disregard such, as it merely "creates a factual dispute" with Defendants' version of the facts, which is perfectly legitimate at this stage of the case. Finally, Plaintiff asserts it has stated a claim upon which relief can be granted because it has alleged that Defendants Oliver and Parris witnessed Assignments in 2016, which were dated in 2005, and that such was done "for the sole purpose of inducing Liberty into foregoing any recovery or liquidation of Tower."

Law

Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6), applicable in this adversary proceeding through Federal Rule of Bankruptcy Procedure 7012, states:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> > (6) failure to state a claim upon which relief can be granted;
>
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.

Under Federal Rule of Civil Procedure 12(b)(6), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), a party may assert by motion the "failure to state a claim upon which relief can be granted." The United States Supreme Court has held that in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In so doing, the Supreme Court renounced the previously "'accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 561-62 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As explained by the Supreme Court in *Twombly*, while "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level," assuming that all of the complaint's allegations are true. *Id.* at 555 (internal quotations and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009), the Supreme Court confirmed that the *Twombly* standard applies in all federal civil actions and not just in antitrust disputes as was the case in *Twombly*. The Supreme Court also emphasized that the assumption that all of the allegations are true does not apply to legal conclusions: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Moreover, the Supreme Court noted that "where the well-pleaded

8

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In order to determine whether a complaint states a plausible claim for relief, the Court must conduct a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In summary, while the plausibility standard first set forth by *Twombly* does not require "'detailed factual allegations'" or a showing of probability, *id.* at 678 (quoting *Twombly*, 550 U.S. at 555), "'the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory,'" *Digeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)). When deciding a Rule 12(b)(6) motion to dismiss, the Court "must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The defendant has the burden of showing that the plaintiff failed to state a plausible claim for relief. *Id.*

Pleading Standard Under Rule 9(b)

> Where [ ] fraud is alleged, the concept of notice pleading is refined by a requirement of specificity. Fed. R. Civ. P. 9(b) (Bankr. R. 7009) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "To satisfy FRCP 9(b), a plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied. " The plaintiff must state with particularity the specific circumstances giving rise to the complaint.

*Huntington National Bank v. Schwartzman* (*In re Schwartzman*), 63 B.R. 348, 355 (Bankr. S.D. Ohio 1986) (quoting *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984) and citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975)).

The court in *Schwartzman* distinguished situations where the plaintiff was a trustee and a stranger to a potentially fraudulent transaction, and where the plaintiff was on the other side of a transaction.

> Where the complaint involves an exception to or a denial of a discharge based on the fraudulent conduct of the debtor, the courts have liberally applied and interpreted pleading rules, particularly in situations where a trustee, a third party, is pleading fraud on secondhand information.
>
> In reconciling the competing standards of notice pleading permitted under Rule 8 and the specificity required under Rule 9 for pleading special matters, . . . even in deciding cases involving a third party trustee plaintiff, [bankruptcy courts] still have insisted on more than broad assertions, mere conclusions, and repetition of statute. They have insisted that the complaint state with particularity the underlying facts and the wrong alleged so that the broad policy of the federal rules to fairly apprise parties of the complaint against them in sufficient detail to allow them to adequately answer and prepare their defense is ensured.
>
> In cases where the plaintiff is not a third party trustee, but an actual participant in the transaction and theoretically has direct knowledge of the factual underpinnings of any claimed fraud, bankruptcy courts have consistently required compliance with these standards. It is necessary to set forth the basic outline of fraud and to indicate who made the misrepresentations and the time and place the misrepresentations were made. Bankruptcy courts have demanded that the factual basis supporting the allegation of fraud be stated with particularity, by identifying those representations alleged to be false.

*Id*. (internal quotation marks and citations omitted).

The *Schwartzman* court also discussed the need for a heightened level of pleading when the complaint is based on oral misrepresentations.

> This specificity is particularly critical when the fraud or misrepresentation is not demonstrated by tangible evidence such as statements signed by the parties or other documents related to the transaction in question. In those situations, the allegations of such a complaint are subject to particular scrutiny to insure that sufficient detail is set forth so that the facts pled may be admitted or denied and all good faith defenses may be set forth in an answer.
>
> It must be noted, however, that a balancing factor in completing an analysis of the specificity requirements of Rule 9(b) is the recognition that the essence of fraud and misrepresentation is the absence of truthfulness and the full disclosure required in the particular circumstances. For that reason, Rule 9(b) does not require the pleading of detailed evidentiary matter. It remains for the party seeking an

> exception from discharge in bankruptcy under § 523(a)(2) [who] has the burden of proof on the issue by clear and convincing evidence, to prove the case at trial, not at the pleading stage.

*Id*. at 355-56 (internal quotation marks and citations omitted).

Analysis

The Court first focuses on the role of Ms. Oliver and Ms. Parris as alleged by Liberty Mutual. In context of the Complaint, which contains two counts – Fraudulent Inducement and Conspiracy to Commit Fraud – the most specific and operative allegation is paragraph 58, where Liberty Mutual asserts that these Defendants made false representations by executing the Consents and Assignments as witnesses, and further extending that inference that each represented the Non-Spouse Defendants owned Tower since February 10, 2005 and that the transfer occurred on that date.

On its face, Plaintiff's allegations are contrary to Michigan law. As argued by Ms. Oliver and Ms. Parris, Michigan law does not require a party who acts as a witness to witness the physical signing of the signature. *Dougherty v. Crandall*, 168 Mich. 281 (1912). Instead, the role of the witness is to authenticate or attest to the validity of the signature. *Id*. at 287-89. In *Dougherty*, neither witness testified that he saw the signature of Mr. Dougherty on the will in question or any other writing on the will. Both witnesses did testify that their respective signature was genuine and that the will was in the handwriting of Mr. Dougherty. *Id*. 284. The *Dougherty* court accepted this testimony as sufficient and consistent with the limited scope and purpose of the role of a witness to a document. Here, there is no claim that a person did not sign either document, so there is no action that can be made as to Ms. Oliver of Ms. Parris as a witness.

The role of a witness cannot be to attest to or opine of the legal effect of any document because the day-to-day act of witnessing documents could not include such a task. For example, does a witness to a deed attest to the accuracy of the legal description of the parcel transferred or the marital status of the granter? Does a witness to a will or trust attest to the legal effect of either

document?  And does the witness to a contract represent that the contract is enforceable or that the goods sold are as warranted?  The answer in each situation is that no such legal effect is imposed on someone who only acts as a witness to the signature of another.

Also, a close examination of each document reveals that neither Ms. Oliver nor Ms. Parris attested that the document was signed on a particular day, much less February 10, 2005.  Instead, each document only states consent or an assignment was made and given or received on February 10, 2005.  Neither document states that either Ms. Oliver or Ms. Parris witnessed the signature on a particular date.  This vague statement, which frankly cuts both for the benefit of Plaintiff as to the other Defendants and for Defendants Oliver and Parris here, contrasts with the classic signature block of a notary public, who takes on additional responsibility.

The Affidavit of Susan Crittenden is silent as to Ms. Oliver and Ms. Parris and is of no help to Plaintiff as to this count of its Complaint.  In fact, paragraph 48 of the Complaint indicates that Ms. Crittenden was consulted with additional materials after her Affidavit was signed and it was only then that she informed Liberty Mutual that each used her married name, not her maiden name in effect in 2005.  Her Affidavit does not tie Ms. Oliver and Ms. Parris to any claim because they witnessed these papers.  Accordingly, the motion to dismiss should be granted as to the Fraudulent Inducement count.

The same is not true for Plaintiff's second count of Conspiracy to Commit Fraud.  It is unexplained why each Defendant signed her married name anywhere from 5 months to 3 ½ years before they were married.  Instead, a logical inference is that each signed as a witness after June 26, 2008, perhaps as soon as the day after Ms. Oliver was married, or as late as 2016, as stated by Ms. Crittenden in her Affidavit and Liberty Mutual in its pleadings.

Plaintiff has made blanket allegations bundling all of the Defendants together, which for the present barely meets the time and specific requirements of Rule 9.  Here, the Court can see more than a mere possibility of misconduct in that it is possible the Debtors did inform Ms. Oliver

12

and Ms. Parris of the scheme as stated by Ms. Crittenden in her Affidavit. On the other hand, it is just as possible that Debtors merely asked Ms. Oliver and Ms. Parris to witness their signatures sometime after June 2008 and each did so without any compunction.

The initial stages of this case require the Court to conclude that either scenario could be possible. Both scenarios, or many in between, are possible, and discovery will flesh out Plaintiff's case or destroy it. At this point, a savvy or experienced judge, applying common sense, cannot rule out Plaintiff's allegations summarily. Instead, the Court will need to draw on its experience and common sense in assessing the veracity of the testimony of Ms. Oliver and Ms. Parris during the relevant disputed time periods.

As to Defendant's argument that a heightened level of pleading is necessary under Rule 9(b), Plaintiff has, for the time being, sufficiently given Defendants notice of the time of the conspiracy and the nature of the conspiracy, which includes the alleged plans to convince Plaintiff that Tower was not owned by the Debtors. After completion of discovery, Plaintiff should be able to pinpoint the specifics of the conspiracy. For now, however, Defendants are given sufficient notice to defend themselves.

Finally, the affidavit of Ms. Crittenden, while questioned by Defendants and urged by them to be disregarded, cannot be ignored by the Court. Issues of credibility or motive, all well argued by Defendants, simply cannot be addressed by the Court in a motion to dismiss and may have to go to trial.

All parties raise valid points and inferences, all of which cannot be properly analyzed or addressed at this stage.

## Conclusion

The inferences that can be drawn as to the possibility of a conspiracy among Ms. Oliver and Ms. Parris and the Debtors, leads the Court to conclude that their Motion to Dismiss on the

conspiracy count is denied. As to Plaintiff's fraudulent inducement, the Court sees no basis to find a claim against Ms. Oliver or Ms. Parris as a witness only, so their Motion to Dismiss is granted.

The Court will enter an Order consistent with this Opinion.

**Not for Publication.**

**Signed on September 16, 2021**



/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge